**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **TERRY W. MYER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 4:24-CV-01547-NCC** |
| ) | |
| **FRANK BISIGNANO,**[1] ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision

of the Commissioner denying the application of Terry W. Myer ("Plaintiff") for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

of the Social Security Act, 42 U.S.C. §§ 401, *et seq*., and 42 U.S.C. §§ 1381, *et seq*.  Plaintiff has

filed a brief in support of the Complaint (Doc. 11), Defendant has filed a brief in support of the

Commissioner's decision (Doc. 12), and Plaintiff has filed a reply (Doc. 13).  The parties have

consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title

28 U.S.C. § 636(c) (Doc. 5).

### I.  PROCEDURAL HISTORY

Plaintiff protectively filed his application for DIB on August 24, 2022 and filed his

application for SSI on October 26, 2022 (Tr. 238-41, 248-56).  Plaintiff was initially denied on

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025.  Pursuant to
Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted,
therefore, for Leland Dudek as the defendant in this suit.  No further action need be taken to
continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42
U.S.C. § 405(g).

February 6, 2023, and upon reconsideration on March 22, 2023 (Tr. 82-123, 134-143, 146-153). He filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 154).  After a hearing, by decision dated November 30, 2023, the ALJ found Plaintiff not disabled (Tr. 7-23). On September 17, 2024, the Appeals Council denied Plaintiff's request for review (Tr. 1-6).  The ALJ's decision stands as the final decision of the Commissioner.

## II.  DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2022, and that Plaintiff has not engaged in substantial gainful activity since June 15, 2018, the amended alleged onset date (Tr. 13).  The ALJ found Plaintiff has the severe impairments of lumbar spine degenerative disc disease and cervical spondylosis, but that no impairment or combination of impairments meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13).  After careful consideration of the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except: he can lift, carry, push, and pull up to 20 pounds occasionally and up to 10 pounds frequently; he can stand and walk for up to six hours in an eight-hour workday; he can sit for up to six hours in an eight-hour workday; he can occasionally climb ramps and stairs but never ladders, ropes, or scaffolds; he can occasionally balance, stoop, kneel, crouch, and crawl; he can frequently reach overhead with both upper extremities; and he must avoid unprotected heights and hazardous machinery (Tr. 13).  The ALJ found that Plaintiff is unable to perform any past relevant work, but that there are jobs that exist in significant numbers in the national economy that he can perform, including cleaner/housekeeping, silver

2

wrapper, and sorter (Tr. 17-18).  Thus, the ALJ concluded that Plaintiff has not been under a disability from June 15, 2018, through the date of the decision, November 30, 2023 (Tr. 18).

### III.  LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled.  20 C.F.R. §§ 416.920, 404.1529.  "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled."  *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits.  20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment.  20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ."  *Id*.  "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'"  *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations.  20 C.F.R. §§ 416.920(d), 404.1520(d).  If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history.  *Id*.

Fourth, the impairment must prevent the claimant from doing past relevant work.  20 C.F.R. §§ 416.920(f), 404.1520(f).  The burden rests with the claimant at this fourth step to

establish his or her RFC.  *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled.").  The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past.  20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work.  20 C.F.R. §§ 416.920(g), 404.1520(g).  At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC.  *Steed*, 524 F.3d at 874 n.3.

If the claimant meets these standards, the ALJ will find the claimant to be disabled.  "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000); *see also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five.").  Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence.  *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable

mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## IV.  DISCUSSION

The Court accepts the facts as set forth in the parties' respective statements of fact and responses. The Court will cite to specific portions of the transcript as needed to address the parties' arguments. In his appeal of the Commissioner's decision, Plaintiff raises one issue (Docs. 11, 13). Plaintiff argues that, in discounting his testimony, the ALJ failed to explain how Plaintiff's symptoms were inconsistent with the evidence, and that the evidence summarized by the ALJ was not facially inconsistent (*id.*). The Commissioner responds that the ALJ properly considered the relevant factors and gave good reasons for discounting Plaintiff's subjective complaints (Doc. 12). The Court agrees with Plaintiff.

For purposes of social security analysis, a "symptom" is an individual's own description or statement of her physical or mental impairment(s). SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished). If a claimant makes statements about the intensity, persistence, and limiting effects of her symptoms, the ALJ must determine whether the statements are consistent with the medical and other evidence of record. *Id.* at *8.

When evaluating a claimant's subjective statements about symptoms, the ALJ must consider all evidence relating thereto, including the claimant's prior work record and third-party

observations as to her daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness, and side effects of medication; and any functional restrictions.  20 C.F.R. § 404.1529(c)(3); *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).[2]  While an ALJ must acknowledge and consider these factors, she need not discuss each one before discounting a claimant's subjective complaints.  *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021).  If the ALJ finds that the claimant's statements are inconsistent with the evidence of record, she must make an express determination and detail specific reasons for the weight given the claimant's testimony.  SSR 16-3p, 2017 WL 5180304, at *10; *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012); *Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991).  The Court must defer to the ALJ's determination if it is supported by good reasons and substantial evidence.  *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016).

Plaintiff notes that the ALJ made two general statements that Plaintiff's symptoms were "not entirely consistent" and "somewhat inconsistent" with the evidence (Doc. 11 at 3) (citing Tr. 14, 16).  Plaintiff argues that, beyond those two statements, the ALJ provided nothing more than a summary of the medical evidence, failing to explain the inconsistencies upon which she relied (*id.*).  Plaintiff further argues that the Commissioner's arguments highlight the problem, offering post hoc rationalizations where the ALJ was silent (Doc. 13 at 2-3).  The Court agrees.

---

[2] In 2016, the Social Security Administration issued a ruling that eliminates the use of the term "credibility" when evaluating a claimant's subjective statements of symptoms, clarifying that "subjective symptom evaluation is not an examination of an individual's character."  SSR 16-3p, 2017 WL 5180304, at *2.  The factors to be considered in evaluating a claimant's statements, however, remain the same.  *See id.* at *13 ("Our regulations on evaluating symptoms are unchanged.").  *See also* 20 C.F.R. § 404.1529.  This new ruling applies to final decisions of the Commissioner made on or after March 28, 2016.

The ALJ reviewed Plaintiff's symptoms (Tr. 14, 16) and the medical evidence (Tr. 15-17) but failed to articulate how they were inconsistent. *See Ratliff v. O'Malley*, No. 4:23-CV-431-ACL, 2024 WL 4298538, at \*6–7 (E.D. Mo. Sept. 26, 2024) (remanding where "[t]he only relevant factor discussed by the ALJ was the objective medical evidence" and "the ALJ failed to specifically detail the inconsistencies in Ratliff's testimony and the record that caused the ALJ to reject Ratliff's complaints"); *Nail v. Kijakazi*, No. 4:20 CV 1422 CDP, 2022 WL 832328, at \*5–6 (E.D. Mo. Mar. 21, 2022) (remanding where "the ALJ did not discuss evidence corroborating Nail's statements about the frequency and character of his headaches" and "ignored medical evidence corroborating Nail's continuing headaches"); *see also Ingram v. Chater*, 107 F.3d 598, 601 (8th Cir. 1997) ("[T]he ALJ must minimally articulate his reasons for crediting or rejecting evidence of disability.") (citation modified); *Oglala Sioux Tribe of Indians v. Andrus*, 603 F.2d 707, 715 n.7 (8th Cir. 1979) (citing "well established" principle "that an agency's action must be upheld, if at all, on the basis that was articulated by the agency itself, and that it cannot be sustained on the basis of post-hoc rationalizations of appellate counsel").

Indeed, Plaintiff's medical records largely support the severity of his symptoms. During the disability period, Plaintiff repeatedly sought medical attention for back and neck pain. Plaintiff's approximately monthly appointments with Interventional Pain Care ("Interventional") in 2018 and 2019, and with Arch Advanced Pain Management ("Arch") from 2021 to 2023, form the bulk of his recorded encounters with the medical community during the disability period.[3] At appointments with Interventional, he typically rated his pain as a 7 out of

---

[3] In addition, on December 15, 2018, Plaintiff visited the emergency room for head pain. After examination and imaging, the neurologist viewed the head pain as "more upper c[ervical] spine pain or neck pain" (Tr. 743), likely of musculoskeletal etiology (Tr. 745).

10 (e.g., Tr. 379, 383, 387, 923).  Following his care with Interventional, Plaintiff had a single appointment with SSM Health Dr. Sean Stoneking for pain management on May 13, 2019 (Tr. 725).  He similarly rated his pain as a 7 out of 10 (*id.*).  While the Arch records largely do not include pain scores, at his last appointment on October 18, 2023, he rated his pain as a 9 out of 10 at its worst, an 8 out of 10 at its least, and a 9 out of 10 at the time of the appointment (Tr. 916).[4]  Plaintiff's examinations repeatedly document muscle spasms and a restricted range of motion due to pain and stiffness (e.g., Tr. 372, 376, 380), as well as pain or tenderness to palpation (e.g., Tr. 727-28).  Plaintiff generally describes his pain as onsetting gradually and slowly getting worse over time (Tr. 916, 921).  Dr. Stoneking noted that his "symptoms have been progressive" (Tr. 725).

Plaintiff was treated with pain medications, including Norco (hydrocodone and acetaminophen) and Lyrica (pregabalin), and with muscle relaxants for spasms.[5]  *See O'Donnell v. Barnhart*, 318 F.3d 811, 817 (8th Cir. 2003) (use of medications such as oxycodone and Skelaxin (a muscle relaxant) support allegations of disabling pain).  Throughout his care with Interventional, Plaintiff is noted as compliant with his medication and not engaging in behavior

---

[4] While his pain is often described as stable or adequately controlled, it is clear that these designations still reflect a very high level of pain.  *See, e.g.,* Tr. 371 (noting that 7 out of 10 pain is stable for him).

[5] Plaintiff also tried Ibuprofen and Naproxen (Tr. 921) and non-pharmacological treatments, including hot showers, topical compound creams, over-the-counter topical pain relievers, and stretching exercises (Tr. 357).  He was also provided lidocaine patches (Tr. 373, 745).  Plaintiff may have tried physical therapy (PT); there is some confusion in record.  *Compare* Tr. 725 (noting his symptoms were not improved with the previous treatment of PT) *with* Tr. 872 (noting Plaintiff reported that he had tried stretches but not PT and that "his insurance may not cover PT").  His last appointment with Interventional on March 19, 2019 indicates that he "[h]as tried and failed conservative measures in the past" (Tr. 354).

that would raise concern (e.g., Tr. 357).  Throughout his care with Arch, Plaintiff is noted as unable to reduce his pain medication due to his pain level (e.g., Tr. 916).

Plaintiff also had a number of diagnostic injections—two lumbar medial branch blocks in 2019 (Tr. 364, 354) and multiple facet joint injections in 2021 (Tr. 920).  Plaintiff reported "more than 80% pain relief" from one of the lumbar medial branch blocks in 2019, but that was only for the duration of the anesthetic (Tr. 354).  Similarly, in 2021, after injections, he reported "greater than 90% improvement" of his bilateral cervical spine pain, but only for the first 24 hours, and "50% improvement" of neck pain (Tr. 920).  The Court notes that the injections provided only short-term relief.

Plaintiff asked for more aggressive treatment, especially toward the end of the disability period, during his care with Arch.  *See, e.g.,* Tr. 917 (noting patient is "asking for increase in pain medication again this visit"); Tr. 916 (noting patient is "asking for LESI [lumbar epidural steroid injection]"); Tr. 920 (noting patient "wants to try cervical facet nerve RF [radiofrequency ablation] again").

As of his last appointment with Arch on October 18, 2023, Plaintiff described his pain as constant, reported that increased activity, sitting for a long time, and going up and down stairs made it worse, and lying flat and resting made it better, and noted frustration with his decreased ability to walk or stand for lengthy periods (Tr. 916).  As of his Arch appointment on August 20, 2021, he reported that some days he could not do anything due to pain, that activity made his pain worse, and that the worst exacerbating activity was carrying an object or standing for 30 minutes (Tr. 921).  *See also* Tr. 920 (September 20, 2021 Arch appointment note that pain affects

his activities of daily living).[6]  As of his May 13, 2019 appointment with Dr. Stoneking, Plaintiff described his pain as all day and reported that standing, walking, and exercising made it worse, and medication, lying down, and heat made it better (Tr. 725).  Dr. Stoneking noted that his "symptoms are exacerbated by flexion, extension, standing, lifting and walking" and "[f]actors which relieve the pain include change in body position and rest") (*id.*).

One curiosity in the record is Plaintiff's seeming gap in treatment between 2019 and 2021.  The Commissioner attempts to argue that this gap is one of the reasons the ALJ found Plaintiff's complaints were inconsistent with the evidence (Doc. 12 at 4).  Plaintiff responds that the ALJ never stated as much (Doc. 13 at 2-3).  The Court agrees with Plaintiff.  The ALJ did not explicitly identify the gap, much less articulate it as a reason for discounting Plaintiff's symptoms.  *See also* SSR 16-3p, 2017 WL 5180304, at *9 (stating the ALJ "will not" find a claimant's symptoms inconsistent with her level of treatment "without considering possible reasons" for why the treatment was not commensurate with her statements).  Plaintiff had to stop care with Interventional due to insurance (Tr. 795, 921).  When he switched to Dr. Stoneking in May of 2019, Plaintiff was switched to Cymbalta (an SNRI antidepressant) and Tylenol #3 (Tr. 729, 795).  Plaintiff reported that Dr. Stoneking had "taken [him] off everything that worked and switched to stuff that doesn't" (Tr. 795).  Thus, he appears to have stopped care with Dr. Stoneking because it was ineffective.  In addition, Plaintiff had car troubles as of January of 2020 (Tr. 788-89) and the COVID-19 pandemic hit during his gap in treatment.

---

[6] *But see* Tr. 918 (October 14, 2022 Arch appointment note that medication is "60% effective"); Tr. 919 (November 24, 2021 Arch appointment note that medication allows him to "remain functional"); Tr. 371 (December 17, 2018 Interventional appointment note that he is able to complete his activities of daily living if he takes his medication).

On remand, the ALJ is directed to consider evidence corroborating the severity of Plaintiff's symptoms. *See Cox v. Apfel*, 160 F.3d 1203, 1208 (8th Cir. 1998) (finding an "objective medical fact supporting Cox's subjective complaints of pain is the consistent diagnosis of chronic lower back pain, coupled with a long history of pain management and drug therapy). The ALJ is further directed to fully explain her evaluation of Plaintiff's symptoms in accordance with SSR 16-3p.

## V. CONCLUSION

For the foregoing reasons, the Court finds that the ALJ's decision is not supported by substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 30th day of March, 2026.

       /s/ Noelle C. Collins
       NOELLE C. COLLINS
       UNITED STATES MAGISTRATE JUDGE